Case of C&B Bank v. Rosentreter, if I pronounce that correctly, for the appellant, Mr. Gurmaraj, for the affidavit of treator. You may proceed. May it please the court. Counsel, I'm Jason Gurmaraj. I'm here today on behalf of my client, Gerald Rosentreter Trust. This is a foreclosure case. My client was a defendant in that case and was the owner of five different parcels, referred to in this case as Tracts 1, 2, 3, 5, and 6, not 4, but 1, 2, 3, 5, and 6. Four of those parcels were farmland. The fifth parcel was a green elevator facility. I'm here to argue for the significant equity that my client had in its properties of over a million dollars even after payment of all valid mortgages and after payment of attorney's fees and costs. My client was denied all equity in its properties through error by the trial court in two ways. First, on count four, the trial court committed clear error on summary judgment by applying a $12 million mortgage to the properties owned by my client, which were never subject to the mortgage. Gerald Rosentreter Trust owned one-half interest in Tracts 1, 2, 3, 5, and 6, and Francis Rosentreter owned the other one-half interest in Tracts 1, 2, 3, 5, and 6. The only mortgage owner on count four was Francis Rosentreter. The bank argues that Francis Rosentreter owned full title to Tracts 1, 2, 3, 5, and 6 when she signed the mortgage on count four. Gerald Rosentreter Trust argues that she only owned half interest in those tracts at the time. Clear evidence before the trial court was that the estate of Gerald Rosentreter, not the trust, but the estate of Gerald Rosentreter, owned the relevant one-half interest in Tracts 1, 2, 3, 5, and 6 at the time the mortgage on count four was signed. Two months later, after the mortgage on count four was signed, the one-half interest in Tracts 1, 2, 3, 5, and 6 were transferred from the estate of Gerald Rosentreter to the Gerald Rosentreter Trust pursuant to the terms of Gerald Rosentreter's work. Can I ask you a question? Is there any proof in the record that shows prior to the transfer by the executor's deed to the trust how Gerald Rosentreter held title? I filed the inventory from the probate estate, which was also filed in MacEuchan County. So he died on September 10, 2008. The probate estate was opened in 2009. Remember, count four was signed October 2010. So the probate estate was opened in 2009. Before that, in 2010, I believe in September 2010, September 27, 2010, the inventory was filed in that probate estate. And it showed his one-half interest in Tracts 1, 2, 3, 5, and 6. Okay, so the inventory showed it. But what I'm talking about, is there any title work or deeds or anything put into evidence showing how, you know, prior to his death, how he held title? It's not in the record. Okay. Frankly, I... Did anybody look at it? I didn't think it was disputed. I sent them a request to admit, saying, you know, admit Frances Rosentreter is the only mortgage owner on count four because clearly she only owns a half interest. Because I was expecting some argument, but I really didn't expect there to be any conflicting evidence other than because in the complaint, it says Jill Rosentreter is the current owner of one-half interest, has tenants in common, in Tracts 1, 2, 3, 5, and 6. So there's no evidence at all that she ever owned a full title. The only evidence is that she owned half title, half interest. So there was absolutely no evidence to support their position that she owned full title at any time. Other than their argument that the answer to the allegation in the complaint indicated fee simple, evidence full title. Right. I'm saying there was no evidence of actual ownership. They made the legal argument that I made a judicial admission arguing fee simple means full title. And that's what the trial court based its judgment on. That's what I believe. That's what our arguments were. There were no findings in the order indicating the basis of the decision. So that's the first way, first main error. Second, Tract 1, the grain elevator facility in which the Jill Rosentreter Trust held a one-half interest was effectively sold at a foreclosure sale for 2% of fair market value. My client's expert appraised the property at $5.6 million and it was effectively sold to the bank at the foreclosure sale for $150,000. 2% of fair market value is clearly a grossly inadequate sale price and is fraud as a matter of law. And it should not have been approved by the trial court as a proper basis to apportion the proceeds from the sale of the combined sale of Tract 1 and Tract 7 to Tract 1. How they apportioned the proceeds from the combined sale to Tract 1. Tract 1 and Tract 7 were subject to different mortgages. So skipping over account 4 for now, relating to the foreclosure sale, on summary judgment, the Jill Rosentreter Trust specifically requested the trial court to order that all tracts be sold separately at the foreclosure sale because the different tracts were subject to different mortgages. In order to properly apply the sale proceeds, the tracts would need to be sold separately. At that time, the trial court agreed and the written judgment entered by the trial court ordered for all tracts to be sold separately. Subsequently, the plaintiff requested the court to change the terms related to the sale. The plaintiff requested for the court to order that Tract 1 and Tract 7 be sold separately and then sold together with the effective sale to be the sale with the highest sale price. Tract 1 and Tract 7 together were the grain elevator facility. The bank made the argument that it wanted to sell Tract 1 and Tract 7 together in order to maximize the sale proceeds because the tracts might sell for less if they were sold separately. I assert that that was just pretext and the bank really had no interest in maximizing the sales price. They are arguing that there is nothing wrong with selling Tract 1 for 2% of fair market value, so I don't think they have much credibility that they are concerned about maximizing the sale price of the foreclosure sale. I think the clear plan by the bank was to minimize the sales proceeds allocated to Tract 1 while still being able to have the combined sale be the effective sale and then to have that be confirmed based on a reasonable sale price on the combined sale. What's the practical result of that? Practical result of what? The way they allocated the sales proceeds. The equity of over a million dollars that my client had in the property, they didn't get any equity back. It's extinguished. Right. And then did they have equity in the other one? It's all combined. I mean, all of their property was subject to the first three mortgages. They're arguing it's subject to the fourth mortgage as well. I'm arguing it wasn't. Just subject to the first three mortgages and all of their attorney's fees. When the farmland was sold, the other four tracts, so my client owned five tracts. The four tracts of farmland were sold, I believe the shortfall at that time was $2.9 million. So if Tract 1, which was appraised at 5.6, sold for 2.9 or higher, my client would have equity in the property. Okay. So clearly the farmland was going to sell for close to fair market value as farmland is always a very competitive market. So minimizing the sale price on Tract 1, the grain elevator was the bank's best chance to avoid having to pay back any equity to the Gerald Rosen Tractor Trust. Since the bank intended to purchase Tracts 1 and 7 at the foreclosure sale, it became a zero-sum game on the sale proceeds on Tract 1 between the bank and my client. If they had to pay more than $2.9 million, they're paying money out of their pocket to my client. If they could minimize the sale price on Tract 1, they could take Tract 1 without having to pay anything for it. Or they could credit it. The bank did the math for the sale. If the bank had to pay close to fair market value on Tract 1, the bank would likely have to pay money out of its pocket to the Gerald Rosen Tractor Trust, and obviously they did not want to do that. So the bank requested the court to order the alternative sales, which allowed the bank the ability to bid a reasonable combined sales price for Tract 1 and Tract 7 together, while still minimizing the bid on Tract 1. But in order to make that look legitimate in order for the sales price on the separate sales to look consistent with the sales price on the combined sale, they had to drastically overbid on Tract 7. Tract 7 was appraised by my client's expert at $2.875 million. They bid $8.85 million, 300% of fair market value. They did not submit any appraisal. They didn't submit any expert testimony on the fair market value on Tracts 1 and 7. The only expert testimony on that was from my client's expert. If the bank had bid $150,000 on the separate sale on Tract 1, and then bid only $2.8 million on the separate sale on Tract 7, and then bid $9 million on the combined sale, that would clearly show shenanigans at the sale. So they wanted to avoid that. So the bank drastically overbid on Tract 7. I've told you what the values were. Tract 1 was appraised at $5.6 million. Tract 7 was appraised at $2.875 million. Also at the sale, the bank had the separate sale of Tract 1 take place first. So they had the ability to minimize the bid on Tract 1 first. They did that. They were able to obtain the winning bid with a bid of only $150,000. Then they took a break. Then they had the separate sale on Tract 7, and they were the only bidder of $8,850,000. Then they had the combined sale, and they were the only bidder with a bid of $9.1 million. So the combined sale netted $100,000 more than the separate sale, so that was the effective sale. So they're going to go to confirmation just saying, we're moving to confirm the combined sale of Tract 1 and Tract 7 for $9.1 million, which I agree is a perfectly reasonable price, and I didn't object to that confirmation of the sale. I actually want them on the hook saying, we admit the combined value for these two Tracts is $9.1 million. They didn't move to confirm the hypothetical sales on the separate sales on Tract 1 and Tract 7. They didn't move to confirm $150,000 for Tract 1. They didn't move to confirm $8,850,000 for Tract 7. So the bid of $150,000 for Tract 1 is 2% of fair market value, and that constitutes fraud as a matter of law, as a grossly inadequate bid. I've cited a case law on that. The bid of $8,850,000 for Tract 7 is more than 300%. It's 307% of fair market value, and that's just outright fraud by the bank intended to manipulate the apportionment of proceeds between Tract 1 and Tract 7 and to make the bids on Tract 1 and Tract 7 look consistent. There is no procedure set forth in the Illinois Mortgage Foreclosure Law for how to apportion proceeds where two different properties are subject to two different mortgages and are sold together. I assert that wasn't even contemplated by the Illinois Mortgage Foreclosure Law. If you look at Section 1508 of that statute, it contemplates that every sale should be subject to confirmation. If you look at that language, that's what it says. So they have not cited any authority in support of their proposed method of apportionment. The judge agreed with them, but there is no authority cited in this case whatsoever, even by the trial court judge, as to, yes, the proper procedure for apportioning sales proceeds on a combined sale where there's two properties subject to two different mortgages is you use the hypothetical sales. There's no set procedure for that. Mr. Gurmarath, before you run out of time here, I do want to just go back to Count 4 here just briefly. Absolutely. You've indicated that there is evidence in the record that would allow the trial court to infer that at the time the mortgage was entered into that Francis owned an undivided one-half interest of the tract and that that should have resulted in the plaintiff's motion for summary judgment being disallowed. In your brief, you request not only that that judgment be reversed, but you ask for judgment to be entered in your client's favor for partial summary judgment as to Count 4. Is your evidence so strong that it entitles you to partial summary judgment on Count 4? Yes. The inventory, which I filed in the case, the inventory from the Hovian case, shows that prior to the date on which the mortgage in Count 4 was entered, title was held, half interest in Tracts 1, 2, 3, 5, and 6 was held by the estate of Gerald Rosenfender. Logically, that must mean he owned that when he died. Also, the other evidence is the executor's deed, which is after the effective date of the mortgage in Count 4, and that shows the transfer from the estate of Gerald Rosenfender to the Gerald Rosenfender Trust. That is the only evidence before the court, and that evidence clearly proves that Gerald Rosenfender owned a half interest in Tracts 1, 2, 3, 5, and 6 when he died, that up until the date of the mortgage in Count 4, it was still owned by the estate of Gerald Rosenfender, and only after that was it transferred, pursuant to the specific terms of his will, to the Gerald Rosenfender Trust. So it was never owned by Francis Rosenfender. I think Justice Harris' question gets back to my original question, too, which is, to me, there's nothing in the record that shows how Gerald ever took title. At this point in time, I'm not saying you couldn't produce that, but right now, what you're relying on are documents that were prepared after his death, an inventory of his estate and an executor's deed, but you could go back behind that earlier and show how he came to be entitled, who he held title with, but there's nothing that shows that now in the record. I agree. The necessary inference is, when he died, the inventory proves what he owned when he died. Are we supposed to be inferring things on summary judgment? I think it's a necessary inference. Speculating, making guesses? I don't know. Your argument, then, I think... I'm not making an argument, but... Your position, I think, questions the validity of the inventory, and I don't think there's any reason to question the validity of the inventory. It shows what he died, what he owned when he died, and that was before the mortgage in Act 4 was signed. So title, prior to the date of entry of the mortgage, is proven, clearly. The inventory was filed. He didn't die, and then the mortgage was signed, and then the inventory was filed. The inventory was filed before the mortgage in Act 4 was signed. So it was of public record when the mortgage in Act 4 was signed. So, back to 1508, proper objections on 1508 are, if the sale was unconscionable, or if it was conducted fraudulently, that's a valid objection to confirmation of sale. In this case, you have the hypothetical sales that they're trying to use to apportion the proceeds. 2% is a grossly inadequate sale, so that's unconscionable. And 300%, for Track 7, is fraudulent. So if you could not have those sale prices, I'm arguing you should not confirm those sale prices on confirmation, then you also shouldn't be able to use those as the basis for apportionment. The only fair basis of apportionment is the actual fair market values, which I proved without dispute in trial. On the receivership matters, I'm just asking for the Court to remand. If you agree with me on Count 4, and you agree with me on the apportionment of proceeds, then my client has significant equity in the properties. On the receivership matters, the properties were managed by the receiver during a year and a half before the foreclosure sale. In this case, there's significant income. There's also expenses, but there's significant income. There was $170,000 plus $50,000 from the supplemental report. So $200,000 of net income from all of the properties. My complaint was it was all commingled. So I don't know what net income is attributable to Tracks 1, 2, 3, 5, and 6, but if you decide with me on Count 4 and on the apportionment, then I'm asking that the receiver file a new report with all of the receipts and disbursements separated by track so that you can see what the net income is from the different tracks. Also, under Rule 366.85, appellate court may exercise jurisdiction to completely determine a case or to determine a case as completely as possible. I'm asking you to decide and order the actual dollar amount on the apportionment of proceeds so that I'm not going back to the court with just your opinion saying, yes, we agree with you on Count 4. We agree that that is not a proper basis of apportionment. I want you to actually order the dollar amount apportionment on the settlement receipts. Thank you. Thank you. We'll have additional time on the bill. Thank you. May it please the court. Counsel, I am Rick Hefner with Hefner, Byers & Blar. We represent the plaintiff in this case, C.N.P. Bank & Trust. Counsel's argument has just ignored the law of the state of Illinois and the facts of the case. Other than that, there are two issues. The first issue is, was the trial court correct in granting summary judgment on Count 4 of plaintiff's complaint? Counts 1, 2, and 3 were mortgages on these tracks of land that the Gerald Rosencranter Trust had an ownership interest. Counsel consented to summary judgment being entered on those. He did not consent to summary judgment being entered on Count 4. On Count 4, at paragraph 3G of the complaint, the plaintiff alleged interest subject to the mortgage fee simple. On July 11, 2012, an attorney who represented the Gerald Rosencranter Trust before counsel filed an answer and admitted that the mortgage was on the fee simple interest. On December 6, 2012, counsel filed an answer and admitted that the mortgage was on the fee simple interest in the property. On June 24, 2013, on the eve of the hearing for the summary judgment motion, counsel filed an answer and denied the allegations of paragraph 3G of the complaint, therefore denying that the mortgage was on the fee simple interest. At the hearing on the motion for summary judgment, I came with the case law saying that on the eve of summary judgment, you can't change your answer, you can't file an amended answer without leave of court, and I argued that. But even if you took prior counsel's admission of that allegation, your position is, your client's position, is that there, as a matter of law, can be no such thing as an undivided fee simple interest. No, no, clearly incorrect. I've run a title company for 35 years. Undivided fee simple interest, my wife and I own our property. I'm sorry, divided. That there could be an undivided fractional share fee simple. In other words, the allegation in the complaint, as you just read it, cannot be interpreted to allow for an undivided fractional ownership of property. It certainly can. If I had alleged interest subject to the mortgage, the undivided one-half interest of Francis Rosentretter, for example, if I put that interest subject to the mortgage, 3G, then I'm saying what is subject to the mortgage is only Francis Rosentretter's undivided one-half interest. You can put in there, if it's a mortgage on a lease, a commercial lease, you can put leasehold interest. If it's a mortgage on a life estate, you can allege life estate. But when you allege interest subject to the mortgage fee simple, that's the whole ball of wax. That's the whole property. The mortgage covers everybody's ownership interest. At 3K of the complaint, we allege here are the owners of the property. And the allegations are undivided one-half interest, Gerald Rosentretter Trust, 1, 2, 3, 5, and 6. Undivided interest, Francis Rosentretter Trust, 1, 2, 3, 5, and 6. And also, 4, she owned the whole thing. That's our allegations. That's our allegations. Well, as I said, June 24th, they denied it. I came with the case law. Counsel says that was a mistake. Denying that the mortgage covered the fee simple interest was a mistake on my part. If the court will allow me to file another answer, corrective answer, I will then again admit that the mortgage covers the fee simple interest. I, of course, had no objection to this because that's the key issue. And counsel did, in fact, file a corrected answer and for the third time admitted that the mortgage covered the fee simple interest in the property. A summary judgment motion, contrary to what counsel's argument is, a summary judgment motion considers the pleadings, the motion for summary judgment, the judgment and the affidavits attached thereto. The pleadings, we have the mortgage covers the whole property, fee simple interest. Three admissions of that. Our motion for summary judgment says they've admitted 3G, so they've admitted the mortgage covers the fee simple interest. They file a response and really in the response, don't respond to that. They file an affidavit of Francis Rosentritter and it concerns the grain bins on the property. Some of them are on the boundary line of the property. Says nothing about the ownership interest of the property. They could have created a genuine issue of material fact had they said, oh, by the way, Gerald Rosentritter Trust owned part of this property at the time the mortgage was made. They did not. They did not address that issue. So Judge Lonergan is left with complaint, allegation, mortgage covers fee simple interest, three admissions of that, and arguments in court saying, oh, the time that I denied it, I made a mistake. I want to admit that. And then the filing of that. And the motion for summary judgment and the affidavits. And the affidavit makes no genuine issue of material fact. I think Justice Polk, your question, followed up on by Justice Harris, is a good question. What's the evidence in the record about ownership of this property? And the evidence in the record about ownership of this property is zilch. There is no evidence in the record concerning ownership of this property. Why not? Because this case was resolved on motion for summary judgment. They admitted that the mortgage covered the fee simple interest in the property. They argue in their brief and have ten pages of the restatement of torts as to what fee simple is. This is not property 101. Your appellate court, Justices, I'll accept the definition that the Supreme Court gives that they set forth in their brief. The Supreme Court has defined fee simple to mean a grant of unrestricted use of real estate in perpetuity and alternatively as an estate in land in perpetuity which confers an unlimited power of alienation which means the owner can freely transfer the ownership. And in 3G, it doesn't indicate 100% of the property. You're indicating that by implication, that that's an implied portion of the allegation. Yes, not just by implication, but that's been the practice since 1987 when this act was passed. If you are foreclosing on the whole property, you allege fee simple. That's what it means. In the statute, in parentheses, they give you some hints as to what to put. It says here in CERC whether fee simple, estate for years, undivided interest, etc. Which could be a leasehold interest, any number of things. The statute goes on to say, at C7 of the statute, allegations, the statements contained in a complaint in the form set forth in subsection A of section 15-1504 are deemed and construed to include allegations as follows. Number seven, that the mortgage constitutes a valid, prior, and paramount lien upon the indicated interest in the mortgage real estate, which lien is prior and superior to the right title, interest, claim, or lien of all parties and non-record claimants whose interest in the mortgage real estate are sought to be terminated. I'm not saying it's by implication, I'm saying it's by clear language of the statute. It's also by every foreclosure that has been filed in the state of Illinois since this act was passed in 1987. That's how it works. Our firm has done over 20,000 foreclosures in this period of time and this is how it works. There's no question about this. The law is all that way, none the other way. There's no case law. As a mortgage holder, do you do title work before you submit a complaint foreclosure? Oh, absolutely. You have to do a complete title search to find the ownership, all the lien holders, and everything. In fact, initially, counsel said, no, Gerald Rosentreter trusts on all the interests, one half interest in tracts one through six, Francis Rosentreter trusts on the other interest in one through six. And we had alleged that Francis Rosentreter owned all four. I called him, I sent him the title work, and I sent him the deed. He changed his answer and said, no, Francis owns all four. But did your title work show that Gerald Rosentreter Trust owned half, one half undivided interest? At the time the complaint was filed. The thing is, that's 3K, that's the allegation of 3K. That is not the ownership at the time the mortgage was made. Is there any proof in the record of how ownership was held at the time the mortgage was made? No, Justice Polk, but there would not be, because this was a motion for summary judgment. There was no evidentiary hearing. He says the inventory is proof of ownership. No, it's not. You prove ownership in court by you having a title searcher. That chain of titles. The title searcher comes in, testifies. He owned it this time. Then it was deeded. Here's a certified copy of the deed. Here's a certified copy. That's how you prove ownership. That's the only way you prove ownership. There is no such thing as, by inference, so-and-so owned the property. It could just as clearly have been that at the time that mortgage was made, Frances Rosentretter owned the whole thing. She deeded half of it into Gerald Rosentretter's trust. We know she deeded half into her trust after the mortgage was made. Who knows? There's no evidence. That's why pleadings and the motion is what's only taken into account on summary judgment. They admitted the allegations. They can say all day that we think and we argue to Judge Londrigan that only one person can own property in fee simple. However, as I said, in 35 years of having a title company, the most common form of ownership of property is husband and wife and joint tenants. And how does the husband and wife, or tenants by entirety, what do the husband and wife as joint tenants own? They own the fee simple interest in the property. Does the husband own the fee simple interest by himself? No. Does the wife? No. In this case, Gerald Rosentretter's trust owned undivided one-half interest. Frances Rosentretter's trust owned undivided one-half interest. Together, what do they own? They own the fee simple interest. Does one of them own the fee simple interest? No. Both of them own the fee simple interest, undivided one-half interest in the property. When you allege in a foreclosure complaint, and as I said, since this law was passed, forever, if the interest subject to the mortgage is fee simple, that means you're foreclosing on the whole thing. If counsel did not believe that, he should have said, deny that allegation and affirmatively set forth, no, it was, the mortgage was only by Frances Rosentretter, it was only on her undivided one-half interest. But instead he admitted it three times. I need to move on. The other thing is the apportionment issue. Counsel, bank created, committed fraud. Bank committed fraud. Bank wanted to do this somehow. You can't, the plaintiff can't commit fraud at an auction that was not only legally advertised once a week for three weeks in the Macoubin County newspaper, but it was advertised in about six more newspapers throughout the state, farm weekly. If you look in the report of sale, you see where it was advertised. It was advertised on national internet sites. The large courtroom in Macoubin County was where the sale was held. I'm sure you're familiar with that. It used to be the biggest courtroom in the state. It was full. We had 41 registered bidders and we had over 150 people at the sale. The bank put in minimum bids on all the real estate and everything else. Why did the bank bid $100,000 on the track that had only the grain bins on it? The bank, to tell you the truth, was advised by Archer Daniel Midland Company. The other track, track seven, had the elevator operation on it. Track one only had some grain bins and one was split in two by the county line to the property. There was no way to get the grain in and out of those bins. If you didn't own track seven, there was no way to scale it. There were no grain pits. There was no way to get the grain in and out of those bins. You had nothing. You had nothing of any value. The bank, on advice of ADM, said, ADM said, you don't want to own just this track. Then you've got five and a half grain bins with no way of getting the grain in and out of them. You've got no way scale for your elevator operation. You've got no grain pits. The trucks drop the grain in. It's not worth anything. But, to say the bank somehow committed fraud, there were all these bidders. And again, we have cited some cases in our brief. All of the case law in the state of Illinois says an appraisal is not the value of the property. What the value of the property is, is an arm's length sale. In this situation, we advertised all over the nation. We had bidders register. We made bidders register. We had bidders from Florida register. We had three grain companies there to bid on this. We tried our best to get the best price possible. Counsel is saying, my appraisal is the value of the property, 5.6 million. It was admitted in court by his appraiser that he didn't use the income approach in doing the appraisal. On commercial properties, the income approach is by far the most reliable approach. Why didn't he use it? Well, I didn't have the income information available. False. That is just a false statement. The Rosentraders operated the elevator operation for us from the time it was built until 2011. They had all that income information. They know Rick Rosentrader was living on elevator operation property in his house in 2012. They know it was not open in 2012 because of the terrible drought. There was no grain. It was not economically feasible. In 2013, the receiver, who was appointed by Judge Lonergan, operated the elevator operation. The receiver's report was filed two weeks before the hearing on confirmation of the sale. It showed the monthly rent that he got for the elevator operation. They had all the information necessary to do... I thought it had something to do with the receiver keeping the appraiser off the property. He refused an entry onto the property or to the books. Supposedly, they could have filed a motion and got access to the property, but the income approach, he did the sales comparison approach and the other way of appraising. The income approach, he had all the income information. Walking around on the property is not going to change the monthly rental that he had the monthly rental on the receiver's report two weeks before he testified. That's a defective appraisal. It's not good. In any case, as I said, all of the case law in the state of Illinois, all of it, supports our position that the arm's length sale is the best method of determining value. In fact, cases cited in the defendant's brief support our position. NAB Bank versus LaSalle Bank cited in the defendant's brief. When there is no fraud or other irregularity in the foreclosure proceeding, however, the price at which the property is sold is a conclusive measure of its value. The Seventh Circuit Court of Appeals noted the difficulty of overturning judicial sales. They said you should not overturn judicial sales that are held. The court also noted that auctions such as judicial sales yield a real price while appraisals are just forecasts. Generally, the price paid for the property at a recent sale is the best evidence of value. Counsel says, we requested the sale be done the way it was done. Incorrect. In open court, counsel was there. We met with Judge Lonergan. Judge Lonergan says, done this many times before where the boundary line splits property. It's all one elevator operation. It should be sold offered separately and then offered combined, whichever brings the best price is how we do it. He then went on to say, as shown in the transcript of the confirmation hearing, that I said, Judge, what happens if it sells together? And he said, I'll take the two prices of the separate sales and I will prorate the additional funds between the two properties on a prorated basis. There was no objection made at that time by counsel. The judge said how it was going to be done and this is what it brought. So, the bottom line is this whole appeal is moot in any case. There was over $5 million owed on the first three mortgages. Summary judgment by consent. These properties, without Track 1, brought $2.15 million leaving a 2 point whatever deficiency and this Track 1 brought $150,000 so it comes to $2.3 million. The acknowledged mortgages, $5 million, it brought $2.7 million. This issue is moot. Whether the fourth mortgage covered the property or didn't cover the property doesn't matter. We're $2.7 million short of the valid mortgages. He tries to get around this by saying, I've got an appraisal and that's fair market value. No, it's not. It's admitted that he didn't even use the income approach which he could have used plus every case in the state of Illinois says when there's an arm's length sale that's what you build on. So, one, the appeal is moot. Two, summary judgment was a property grant. Thank you. Sir, would I have your bow? Thank you. Yes, he's still trying to argue that fee simple means full title and it doesn't. He's saying, well, it's my practice as a foreclosure attorney to list fee simple if I mean full title. That's not what it says and that's what the pleading says is what you have to base the judicial admission on whether there is one or not. The pleading says, quote, interest subject to the mortgage colon, fee simple, unquote. Was her one half interest in Tracts 1, 2, 3, 5, and 6 a fee simple interest? Yes. It wasn't a fee tail interest. It wasn't a life estate interest. It wasn't a lease. It was a fee simple interest. So, I admitted the allegations. Did I admit that she owned full title? Absolutely not because fee simple doesn't mean full title. He's still trying to make that argument, but fee simple does not mean full title. Yes, I did cite to 10 pages. I gave you 10 pages of property law to prove that. He's attacking the expert's appraisal. My expert would have done the income approach if he would have been provided with the income information that he requested from the receiver. The receiver denied them the income information. The receiver is a plaintiff's agent. If he would have got that information, he would have done the income approach. So, they are equitably stopped from arguing there's something wrong with your appraisal because you didn't do the income approach, which we stopped you from doing because we refused to give you the records. His other arguments about what information my client had and whether they had sufficient information to do the income approach is nowhere at all in the record. None of that was even talked about at the final hearing. So, none of that is supported in the record anywhere. Track 1 consisted of 70 acres and it brings on an individual bidder basis. The separate option for Track 1 brings $150,000 and it's greatly improved with the facilities on there. What's your explanation as to, given the interest apparently this option generated, what's your explanation    there's not that many people in Macomb County with $10 million to spend on a facility that only brought $150,000. I would say there's not that many people with $150,000 to spend on grain elevators. It's not in the record. It's also my understanding that this is basically ADM buying this and that they said to their competitors they would have done this as an option. That's my explanation. It's 2% of fair market value. My legal argument 2% of fair market value is a grossly inadequate sale price. It should be denied on confirmation. That's not how things happen in this case. They made a hypothetical sale by having the effective sale be the combined sale. So I'm arguing you can't apportion it based on a sale price that could not be confirmed at a motion to confirm the sale. I cited the case law. 10% is grossly inadequate. It's fraud. As a matter of law you should not approve the sale based on 10% of fair market value. 30% you can't do it. 50% you can't do it. 2% clearly grossly inadequate sales price. You should not confirm the sale. What about Mr. Huebner's mootness argument? That the mortgages exceeded the sales proceeds anyway. That's if you agree with him on count 4 that fee simple means full title which it doesn't. If the $12 million on count 4 doesn't apply then after the like I said before after the sale of the farmland the there was only $2.8 million left to be owed on counts 1, 2 and 3 and their attorney's fees and costs. So if track 1 sold for $2.8 or higher then my clients have equity in the property not even including net income from the receivership. So the mootness argument is based on the gotcha argument that they're trying to make which is completely contradicted by the evidence as to ownership. So I I'm saying the inventory and the deed prove that Francis Rosentretter didn't know the full title. They're saying yeah maybe but you admitted this so we got it. No. Fee simple doesn't mean full title. Thank you. Thank you. We'll take this matter under advisement. Stand in recess until the readiness of the